ARKANSAS DEPARTMENT of HUMAN SERVICES *v.*
Honorable Gary ISBELL, Judge, Christina Starry,
Mother of Minor Child

04-852                                         200 S.W.3d 873

Supreme Court of Arkansas
Opinion delivered January 6, 2005

*Gray Allen Turner*, for petitioner.

*Mike Beebe*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen.,
for respondents.

BETTY C. DICKEY, Justice. The Department of Human
Services (DHS) seeks a writ of prohibition to prevent the
Marion County Circuit Court from enforcing an order that DHS
perform a home study in Kansas. The petition is denied because the
circuit court has rescinded its order.

At issue is the placement of a fifteen-year old child with the
child's biological aunt, living in Kansas. This aunt was being
considered for legal custody through the Interstate Compact on

the Placement of Children (ICPC). On March 11, 2004, the circuit court ordered a home study through ICPC. On June 25, 2004, the circuit court, expressing concern that the home study through ICPC had not been completed and citing a need to place the child immediately, issued an order requiring DHS to proceed to Kansas to perform a home study on the aunt's home by August 11, 2004. Confirming from both the CASA worker and the attorney ad litem that there was no objection by DHS[1], the court stated:

> The Court finds that it is imperative with [the child's] upcoming discharge from treatment that we update his placement with [his] family in Kansas. The Court finds that the wheels of ICPC turn too slowly for that to happen in a timely fashion, so the Court has directed that DHS do a home study on the [child's] family in Kansas. The Court finds that there is an availability of time and effort because DHS is already going to be in the State of Kansas for another matter, and the Court would direct that occur on that date. The Court would note that this has been with the compliance with the CASA worker . . . as well as with. . . the attorney ad litem in this case, is that right?

On July 7, 2004, DHS filed an application for stay of the order to do the home study in Kansas, arguing that the circuit court erred in ordering DHS to undertake an out-of-state home study. On August 6, 2004, DHS petitioned for a writ of prohibition and application for temporary relief with this court. On August 10, 2004, we stayed the circuit court's order and directed the parties to submit simultaneous briefs on the issue. On August 11, 2004, the circuit court withdrew its previous order requiring DHS to perform a home study in Kansas, because the ICPC home study had been completed and had been received by the circuit court. The circuit court, awarding custody of the child to the aunt, stated:

---

[1] This court notes that subject-matter jurisdiction can be raised at any time. *Parker v. Sebourn,* 351 Ark. 453, 456, 95 S.W.3d 762, 765 (2003). It is well settled that subject-matter jurisdiction may not be stipulated by the parties and, "if lacking, cannot be induced simply because there is no objection." *Id.; J. W. Reynolds Lumber Co. v. Smackover State Bank,* 310 Ark. 342, 352, 836 S.W.2d 853, 858 (1992).

At this point in time then the Court would withdraw previous orders made by the Court requiring the Department to do a home study in Kansas. It's now been done by ICPC, so it's probably moot anyway.

DHS now asks this court to issue a writ and order that: (1) DHS no longer be required to perform the out-of-state home study; and, (2) no contempt or enforcement proceedings may be undertaken in the circuit court. DHS contends that "the trial court has exceeded its power in this case, and should be prevented from enforcing the order, or punishing the Department or its caseworkers for violating an order that should have never been entered." DHS argues that the circuit court must enforce the Interstate Compact on the Placement of Children, and that a circuit court does not have the statutory authority to order DHS to perform a home study in another state.

We need not address those arguments because the trial court has the inherent power to modify an order with or without notice to any party by motion of a party or on its own within ninety days of filing. *Steward v. Wurtz*, 327 Ark. 292, 938 S.W.2d 837 (1997); *Young v. Young*, 316 Ark. 456, 872 S.W.2d 856 (1994). The power of a court to modify or set aside a judgment during the term it was entered, now ninety days according to Rule 60(b)[2], exists as an inherent power and outside of any rule or statute. *Id.; Massengale v. Johnson*, 269 Ark. 269, 599 S.W.2d 743 (1980); *Cowan v. Patrick*, 247 Ark. 886, 448 S.W.2d 336 (1969); *Wright v. Ford*, 216 Ark. 55, 224 S.W.2d 50 (1949). That authority exists so that courts may review and correct any mistakes, errors, or indiscretions that might have been committed during the term. *Id.; Underwood v. Sledge*, 27 Ark. 295 (1871).

Because the trial court has already acted and there currently is no act to prohibit, the petition is denied.

Denied.

GUNTER, J., not participating.

---

[2] After the 2000 amendment to the Rules of Civil Procedure, the power to modify or set aside a judgment during the term it was entered is now found at Rule 60(a).